Daniel, 3.
 

 The plaintiff employed the defendant as his agent to manage his landed estates in the county of Burke, to receive the rents and pay the expenses of the same; also, to see to the renewal and payment of certain notes, which the plaintiff then owed in the bank at Morganton. The plaintiff, being much pressed for money, also employed the defendant as his agent to take eight of his slaves to Alabama, and sell the same for cash. The defendant carried the said slaves out to Alabama, and sold them at high prices on credits, and took bonds for the purchase money. When the plaintiff was informed of the said sale, and the manner it had been made, he adopted it. And when the said bonds became due, the defendant was again employed by the plaintiff as his agent, to go
 
 *308
 
 to that State, and collect the money due on the bonds. The plaintiff, then being in great distress for money, urged the de-. fendant by letters, to make remittances-to him. But collectjong -n tjjat gtate then being difficult to be made, the defendant, for the accommodation of one of the debtors, Solomon Adams, who could not then pay his bond, endorsed a bill of exchange for $4000, drawn by the said Solomon Adams and one Benjamin Adams, on Adams and Taylor, of Mobile, payable to the defendant, nine months after date, in order to enable Solomon Adams to raise the money to pay his bond. The bill was accepted by the drawees, and all the parties to it were considered good. This bill, endorsed by the
 
 defendant in his
 
 own name, was sold by Adams to Sheffield and Co. for $3200 only, which money Adams paid to the defendant, and he remitted it to the plaintiff. The bill of exchange, when it arrived at maturity, was protested for non-payment. The holders, Sheffield and Co., then brought suit against
 
 the
 
 defendant on his endorsement. The defendant says, that he was ignorant, when he endorsed the bill, that he would be in law liable to the holders for the amount of the said bill, but that, being advised by counsel, that he was liable, he then paid the holders the whole sum mentioned in the face of the bill. It does not appear to us from any evidence in the cause, that he, at the time, mentioned to his counsel all the facts and circumstances, under which the bill had been made, endorsed and discounted by Sheffield and Co. If he had done so, his counsel must have informed him, that he could have effectually resisted the holders’ action on the bill, on the ground of
 
 usury;
 
 as, by the statute (year 1819,) of Alabama, it was in fact void lor usilry; or, if he did not wish to plead the statute of usury, he could have resisted the plaintiff's recovery of $800, at least of the sum, on the ground of its being without consideration. This might have been done
 
 at
 
 law, if the New York rule is followed in Alabama,
 
 Ham
 
 v. Hendricks, 7 Wend. Rep. 569.
 
 MeElwee
 
 v.
 
 Collins,
 
 4 Dev. & Bat. 209. Or it might have been done in Equity, if the Alabama courts follow the English rule, by bringing the money actually received on the
 
 *309
 
 bill of exchange, and interest, into court, and then the Court of Equity would have relieved by a perpetual injunction, or a decree to surrender up the bill to the endorser;
 
 Taylor
 
 v.
 
 Smith, 2
 
 Hawks, 465.
 
 McBrayer
 
 v.
 
 Roberts, 2
 
 Dev. Eq. 50. But, says the defendant, if I did blunder and imprudently pay the holder of the bills $800 more than I received on it, I did it through ignorance of the law, when I thought I was doing the best for the plaintiff, and that I have not personally received one cents’ benefit by the transaction ; and furthermore, the plaintiff has since adopted my endorsement and subsequent payment of the bill. The answer we have to give to all this is:
 
 First,
 
 that the authority of an agent to collect a note or bill, docs not authorise him to endorse the note or bill, either in the name of his principal, or on his account;
 
 Murry
 
 v.
 
 East India Company,
 
 5 Barn. & A. 504. Paley on Agency, 192. Much less is an agent authorised to endorse another paper for the debtor, to enable the latter to raise money to pay the principal. Its being done through ignorance of the law, cannot be a reason why the plaintiff should sustain the loss, although the defendant has derived no benefit from the transaction, and did then believe he was doing the best for the plaintiff’s interest.
 
 Secondly,
 
 before the defendant could insist, that the plaintiff had adopted, as his, the endorsement on the bill, it became necessary for him to prove, that the principal was fully apprised of all the facts and circumstances attending the transaction. Lewin on trusts, 643. So far from showing us, that the plaintiff had full knowledge of all the facts, the correspondence between them, filed as evidence in the cause, shews that the plaintiff was altogether ignorant of the terms, upon which the bill of exchange had been obtained and negotiated. In truth, the defendant at no time gave the plaintiff to understand, that he was looked to by the defendant as bound to take the loss on himself. And the plaintiff, particularly by his letters, sought Information on this subject of the bill from the defendant, and never distinctly got of him, as we can see, the information sought. It is true, that the plaintiff did not at first, on the imperfect information
 
 *310
 
 he had received, declare that he would not stand to the loss'. this might well arise from the circumstance, that the defendant had informed him, that he had every assurance that tjie money ($800,) would be obtained from Adams, whom he said in his letters that he had sued, and that he soon expected judgment and satisfaction. But there is not sufficient proof to authorise us to declare, that the plaintiff ever adoptedtas his the said endorsement, or ever agreed with the defendant that he would sustain all the loss on the bill.
 

 The utmost that can be presumed against the plaintiff is, that he agreed to indulge the defendant for money, which the defendant collected from other debtors to the plaintiff, and had iised in taking up the bill from Sheffield and Co. until the defendant could recover in an action he brought on the bill against the acceptors and drawer of the bill. When the plaintiff in his letters makes use of the words, “my funds,” and “ my debts,” he is not, as we think, confining himself to the Adams’ debt, or to the bill of exchange ; for it will be recollected that he had several debtors in that State besides the Messrs. Adams, and that the defendant was his agent to get in all the said debts. We are of opinion, that the first exception to the report of the master must be sustained, and that instead of the credit of $4267 27 allowed for this bill, the defendant be allowed a credit for the sums actually paid by him into Bank for the plaintiff on the 12th and 18th days of May, 1836, for the plaintiff.
 

 The second exception is to the allowance to the defendant for his wages while in the plaintiff’s service. We think it must be overruled. The defendant claims his actual expenses and wages for himself while he was actually engaged at the rate of $2
 
 per diem.
 
 It is apparently reasonable. Besides, the plaintiff, when he first employed the defendant? agreed to give those wages on that trip; and he suggested no diminution, when he subsequently sent him. But it was said that his subsequent journeys were rendered necessary by his own fault in making sales on a credit, and getting himself into a difficulty with the Messrs. Adams. As to the first, the
 
 *311
 
 plaintiff adopted the defendants acts as it, was to his profit, perhaps at the rate of 25 per cent. And as to the second, the visits to the South were rendered necessary by the other business of the plaintiff, and were undertaken each time at the earnest instance of the plaintiff, as is plainly seen in his letters.
 

 Per Curiam, Decree for the plaintiff .